### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ZACHARY A. HALLEY,

      Petitioner,                          **Case No. 2:13-cv-199**

   v.

WARDEN, ROSS                   **JUDGE JAMES L. GRAHAM**
CORRECTIONAL INSTITUTION,     **Magistrate Judge Kemp**

      Respondent.

### REPORT AND RECOMMENDATION

Petitioner, Zachary A. Halley, a prisoner at the Ross Correctional Institution located in Chillicothe, Ohio, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The case is now before the Court on the petition, return of writ, and the exhibits of the parties. No traverse has been filed and the time for doing so has long passed. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claims be **DISMISSED**.

### I. PROCEDURAL HISTORY

On November 20, 2009, a Gallia County, Ohio grand jury returned a two-count indictment charging petitioner with one count of breaking and entering in violation of Ohio Revised Code §2911.13(A) and one count of aggravated robbery in violation of Ohio Revised Code §2911.01(A)(1). The charges accused him of committing the first offense on or about October 14, 2009 and the second one on or about November 14, 2009. He entered a plea of not guilty. His case was tried to a jury on July 22, 2010, and on the same day the

jury returned guilty verdicts on both counts. In a judgment entry filed on July 29, 2010, the trial judge sentenced petitioner to an aggregate term of eleven years of incarceration.

Petitioner filed a timely notice of appeal to the Fourth Appellate District Court of Appeals. In his brief, he raised the following assignments of error:

I.    THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING HEARSAY TESTIMONY TO BE ENTERED ONTO THE RECORD.

II.   DEFENDANT ZACHARY HALLEY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR THE FOLLOWING REASONS:

    A:    HIS ATTORNEY REFUSED TO ALLOW HIM TO TESTIFY TO ALIBI OR ON HIS OWN BEHALF, THEREBY LEAVING THE STATE'S EVIDENCE UNCONTESTED;

    B:    HIS ATTORNEY FAILED TO MOVE THE COURT FOR AN ACQUITTAL PURSUANT TO OHIO CRIMINAL RULE 29

III.  THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

IV.   THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN CONVICTIONS OF BURGLARY AND BREAKING AND ENTERING.

V.    THE CUMULATIVE ERROR IN THE TRIAL DEPRIVED THE DEFENDANT OF A FAIR TRIAL.

In an opinion issued on March 30, 2012, the court of appeals overruled each assignment of error and affirmed the judgment of the trial court. *State v. Halley*, 2012 WL 1245659 (Gallia Co. App. Mar. 30, 2012). The Court considered Halley's first assignment of error under a plain error analysis.

On May 11, 2012, petitioner, acting *pro se*, filed with the Ohio Supreme Court a

notice of appeal from his direct appeal.  He set forth the following propositions of law:

I. The trial [court] committed plain error in permitting hearsay testimony to be entered onto the record pursuant to Rule 801 of the Ohio Rules of Evidence.

II. Defendant Zachary Halley received ineffective assistance of cousnel for the following reasons: (A) His attorney refused to allow him to testify to Alibi or on his own behalf, thereby leaving the State's evidence uncontested; (B) His attorney failed to move the court for an acquittal pursuant to Ohio Criminal Rule 29.

III. The conviction was against the manifest weight of the evidence.

IV. The state failed to produce sufficient evidence to sustain convictions of burglary and breaking and entering.

V. The cumulative error in the trial deprived the defendant of a fair trial.

On September 5, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  *State v. Halley,* 132 Ohio St.3d 1514 (Sept. 5, 2012).  This timely petition followed.

## II.  THE FACTS

The facts of this case were summarized by the state court of appeals, in its Opinion of March 30, 2012, as follows.

On October 14, 2009, appellant and his brother, Nathan Halley, visited Clifford's Auto Parts. Carl Clifford Stapleton, the owner of the business, and an employee, Keith Pugh, knew the Halley brothers. In fact, appellant had previously worked for Stapelton [sic]. The Halley brothers lingered for approximately fifteen minutes, during which time Nathan remained inside and talked with Stapleton and Pugh, while appellant entered and exited the building several times. After the Halley brothers left, Pugh went outside to lock an outer building. Pugh then discovered three missing catalytic converters that had been stored inside a building prior to the Halleys' arrival.

A short time later, the Halleys appeared at "L & L," a scrap metal and recycling business, and sold three catalytic converters to Chris Lester, the

3

owner's son, for $100. Suspecting that the Halleys may have been involved in the missing parts, and that they may have tried to sell them, Pugh visited L & L the next day. At L & L, Pugh identified the parts that the Halleys sold to Lester as the parts he had removed the previous day, shortly, before the Halleys arrival at Clifford's Auto Parts.

The following month, Janet Jackson was working at the Dollar General Store when a man entered the store, took a Pepsi from a cooler and proceeded to the check-out counter. When Jackson opened the cash register, the man brandished a knife, demanded all of the money in the register and quickly fled the store. Although Jackson did not recognize the man, surveillance video captured the incident. Jonna Cutlip, another Dollar General employee, came to work the next day and viewed the video tape. Cutlip recognized the appellant as the perpetrator.

The Gallia County Grand Jury returned an indictment that charged appellant with breaking and entering (Clifford's Auto Parts), as well as aggravated robbery (Dollar General). Appellant pled not guilty and the matter came on for jury trial on July 22, 2010.

At trial, Keith Pugh testified that the catalytic converters that appellant sold to L & L were the same ones that he removed from cars the previous day. Janet Jackson also identified appellant as the man who robbed Dollar General. Additionally, Carla Durham, from the Ohio Bureau of Criminal Investigation (BCI), testified that she matched appellant's finger prints to prints on the Pepsi bottle that the perpetrator brought to the counter.

*State v. Halley*, *supra*, at *1.

## III. PETITIONER'S HABEAS CLAIMS

Petitioner filed his habeas corpus petition in this Court on March 7, 2013.  In his petition, he raised the following four grounds for relief:

**Ground One:** THE TRIAL COURT COMMITTED PLAIN ERROR IN PERMITTING HEARSAY TESTIMONY TO BE ENTERED ONTO THE RECORD PURSUANT TO RULE 801 OF THE OHIO RULES OF EVIDENCE.

**Supporting FACTS:** The error of permitting hearsay evidence in the case at bar was plain error because the jury heard testimony offered by non-declarants offered for the truth of the matter asserted.  The hearsay testimony helped establish a false fact in the mind of the jury:

4

that an eyewitness to the crime positively identified Zachary Halley as the perpetrator of the crime base[d] solely on his or her personal [knowledge] of Zachary Halley. No such fact was ever established via legitimate evidence at the trial.

**Ground Two:** ZACHARY HALLEY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR THE [FOLLOWING REASONS:] 1. ATTORNEY REFUSED TO ALLOW HIM TO TESTIFY TO ALIBI OR ON HIS OWN BEHALF [2]. HIS ATTORNEY FAILED TO MOVE THE COURT FOR AN ACQUITTAL PURSUANT TO OHIO CRIMINAL RUL[E] 29.

**Supporting FACTS:** Zachary Halley [needed] to take the stand and explain how his fingerprints came to be on the bottle of pop found at the scene of the Dollar General crime. Defendant should have out of necessity testified on his own behalf. Without defendant's testimony, there is no evidence at the time of the crime. Defense counsel failed to issue subpoenas to material witnesses that would have provided an alibi for the Defendant. Defense counsel failed to move for an acquittal pursuant to Ohio Criminal Rule 29 at the close of the State's case; not doing so put the case in the hands of a jury that was already prejudiced against Zachary Halley because of the other errors made by the trial Court and defense counsel, and therefore the fairness of the proceeding was compromised.

**Ground Three:** THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**Supporting FACTS:** The owner of Clifford's Auto Parts, testified that he had no knowledge of Zachary taking anything from his property. Employees, also admitted that he [sic] did not see Zachary take anything from the premises. Further, Mr. Pugh testified that a time period of approximately 50 minutes passed between the time he place[d] the catalytic converters in the parts building and when he allegedly discovered the converters were missing. Such a time period certainly was sufficient for many other people to possibly have access to the area in question.

**Ground Four:** THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN CONVICTIONS [FOR] BURGLARY AND BREAKING AND ENTERING.

> **Supporting FACTS:** The evidence was legally insufficient to sustain the conviction. There was no direct evidence provided by the State of Ohio proving the elements of Breaking and Entering. Additionally, the only eye witness to the crime at Dollar General provided physical characteristics of the alleged perpetrator that did not match the physical characteristics of Zachary Halley. The evidence was insufficient to sustain both convictions.

The parties do not dispute that petitioner's petition for habeas corpus is timely and that petitioner exhausted the claims he presents in his petition. However, respondent argues that petitioner's first ground for relief was procedurally defaulted, that the third ground is not cognizable in federal habeas corpus, and that the remaining two grounds are without merit. Those arguments are addressed below.

## A. GROUND ONE

Respondent argues that Ground One, which asserts that the trial court committed plain error in permitting hearsay testimony to be entered onto the record, has been procedurally defaulted.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an

avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional

7

error.  *Id*.  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the first prong – whether petitioner failed to comply with an applicable state procedural rule – respondent argues that petitioner failed to comply with Ohio's "contemporaneous objection rule."  A review of the transcript confirms that petitioner made no contemporaneous objection during the testimony of Police Officer Holcomb.  (Doc. 8-1.)  Respondent argues that this failure to object violated Ohio's "contemporaneous objection rule, Ohio R. Crim. P. 30," which, it argues "requires a party to make an objection at trial in order to preserve an issue for appellate review." (Doc. 7.)  However, Rule 30 is entitled "Instructions" and appears to relate only to objections with respect to jury instructions:

> (A) Instructions; error; record
>
> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.
>
> On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

8

(B) Cautionary instructions

At the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case.

Ohio Crim. R. 30.  Although nothing in the text of the rule indicates that it applies to any area of trial other than jury instructions, there appears to be a non-codified Ohio contemporaneous objection rule that applies to any error that could have been avoided or corrected by the trial court if a contemporaneous objection were made.  *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St. 3d 121, 123, 512 N.E.2d 640, 643 (Ohio 1987) ("An appellate court will not consider any error which a party complaining of a trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.") (citations omitted).  The Court of Appeals has recognized this broad contemporaneous objection rule.  *See, e.g., Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

In *Hinkle v. Randle*, the Court of Appeals held that a claim for prosecutorial misconduct claim involving the prosecutor's statements in closing argument was procedurally defaulted.  271 F.3d at 244.  The Court of Appeals noted, "[w]e have held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice." 271 F.3d at 244.  Similarly, in *Williams v. Bagley*, the Court of Appeals applied the contemporaneous objection rule to petitioner's failure to object to prosecutor's

9

impermissibly vouching for the credibility of petitioner's accomplices during their testimony.  380 F.3d 932, 968 (6th Cir. 2004).  Here, there was no objection to the testimony of Officer Holcomb.  Had the trial court concluded that the testimony at issue was hearsay, a timely objection could have either prevented the testimony from being given or could have resulted in a curative instruction.  Accordingly, Ohio's contemporaneous objection rule applied, and the first prong of the procedural default analysis is satisfied.

Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits."  *Hinkle,* 271 F.3d at 244.  Here, the state appellate court, which issued the last reasoned opinion reviewing petitioner's claim that hearsay was improperly admitted into evidence, applied a plain error analysis:

> In the case sub judice, we do not accept appellant's assertion that the testimony at issue constitutes inadmissible hearsay. . . . Further, even if we assume, for purposes of argument, that [the witness's] testimony included hearsay, we would not find plain error in this case.  It is well-settled that notice of Crim. R. 52(B) plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. . . . More important, to find plain error we must be able to say that, but for the error, the outcome of the trial clearly would have been otherwise. . . . In the case sub judice, in light of the fact that Jackson selected appellant from a photographic line up, as well as appellant's finger prints on the Pepsi bottle that the assailant handled just before he robbed the store, we cannot conclude that the outcome of this trial would have been different if the alleged hearsay had been excluded.

> Moreover, we also conclude that in view of the evidence adduced at trial, this alleged error would be harmless beyond a reasonable doubt.

*State v. Halley*, 2012-Ohio-1625 at ¶22 (citations omitted).  Respondent argues that by applying plain error review pursuant to Criminal Rule 52(b), the state appellate court was enforcing the contemporaneous objection rule.  *Hinkle* supports this argument, noting that the Court of Appeals "view[s] a state appellate court's review for plain error as the enforcement of a procedural default."  271 F.3d at 244 (citations omitted); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules") (citations omitted).

The fact that the state appellate court here also noted that it did "not accept appellant's assertion that the testimony at issue constitute[d] inadmissible hearsay" did not remove the procedural default.  *See Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 506 (6th Cir. 2012) ("The Ohio court's alternative ruling on the merits did not remove the procedural default because 'a state court need not fear reaching the merits of a federal claim in an alternative holding,'" citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) and *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir.1998)).  The Court of Appeals in *Conley* noted that in that case "[t]he Ohio Court of Appeals found no plain error on the record and held that 'Additionally, appellant has not persuaded us that the comments actually constitute prosecutorial misconduct,'" and still held that the Ohio appellate court did not waive the procedural default.  *Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x

11

501, 506 (6th Cir. 2012) (citation omitted).  Accordingly, the state appellate court's application of plain error review satisfies the second prong of the procedural default analysis.

Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  As noted above, the Court of Appeals in *Hinkle* noted that it had "held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice."  271 F.3d at 244.  The *Williams* decision also confirmed that Ohio's contemporaneous objection rule was an adequate and independent state ground.  380 F.3d at 968-69.

Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).  Petitioner has not filed a traverse, and the facts he lists in his petition in support of Ground One do not describe any cause for the default or prejudice from the alleged error.  Generally speaking, "ignorance of the law and procedural requirements ... is insufficient to establish cause to excuse [a] procedural default." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th

12

Cir. 2004). Furthermore, petitioner has not preserved any argument that counsel was ineffective for failing to object to the introduction of the testimony at issue. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) ("Ineffective assistance of counsel, then, is cause for a procedural default. However, we think that the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"). Thus, the Court cannot find cause and prejudice sufficient to excuse the procedural default of Ground One, and it will be recommended that Ground One be dismissed due to its having been procedurally defaulted in the state courts.

## B. GROUND THREE

Respondent argues that ground three - that the conviction was against the manifest weight of the evidence – is not cognizable in federal habeas corpus because it is not based upon a federal constitutional right but instead arises solely under Ohio law. Petitioner has not filed a traverse and has therefore not responded to this argument. This Court has consistently held that a claim that a jury's verdict was against the manifest weight of the evidence cannot be considered on its merits in an action for habeas corpus relief filed under 28 U.S.C. § 2254. That is because § 2254 permits federal courts to grant relief to a state prisoner only if there is a showing that the person is being held in custody in violation of the Constitution or laws of the United States. Neither the Constitution nor the laws of the United States require reversal of a jury's verdict if it is against the manifest weight of the evidence; such a claim is based entirely

13

on Ohio law. As the Court explained in *Norris v. Warden, NCI*, No. 2:08-CV-732, 2010

WL 582623, *9–10 (S.D. Ohio Feb. 11, 2010), *adopted and affirmed* 2010 WL 883847 (S.D.

Ohio Mar. 9, 2010):

> Petitioner's contention . . . that his convictions are against the manifest
> weight of the evidence fails to present an issue appropriate for federal
> habeas corpus review. The Due Process Clause does not provide relief for
> defendants whose convictions are against the manifest weight of the
> evidence, but only for those who have been convicted without enough
> proof to allow a rational trier of fact to find guilt beyond a reasonable
> doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). . . . [U]nder Ohio
> law, a claim that a verdict was against the manifest weight of the
> evidence-as opposed to one based upon insufficient evidence-requires the
> appellate court to act as a "thirteenth juror" and review the entire record,
> weight the evidence, and consider the credibility of witnesses to
> determine whether "the jury clearly lost its way and created such a
> manifest miscarriage of justice that the conviction must be reversed and a
> new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d
> 717 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652
> (1982). Since a federal habeas court does not function as an additional state
> appellate court, vested with the authority to conduct such an exhaustive
> review, any claim that petitioner's conviction was against the manifest
> weight of the evidence cannot be considered by this Court.

While courts have sometimes liberally construed a claim that the verdict was

against the manifest weight of the evidence as raising a claim based on the *sufficiency* of

the evidence, *See Nash v. Eberlin*, 437 F.3d 519, 522 (6th Cir. 2006) (noting that the

"manifest-weight-of-the-evidence claim did not raise an issue of federal law," but that

the district court liberally construed the petition "to raise a claim based on sufficiency of

the evidence"), petitioner here has separately asserted sufficiency of the evidence in

Ground Four. Accordingly, Ground Three does not raise an issue of federal law and

should be dismissed.

14

## C.  GROUNDS CONSIDERED ON THE MERITS

Respondent acknowledges that Ground Four and Ground Two were properly raised before the Ohio courts and are properly before the Court here.  However, respondent argues that both grounds are meritless and should be denied.  The Court reviews both of the remaining grounds under the legal standard set out by Congress in 28 U.S.C. §2254(d).

### 1.  Legal Standard

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010) (citations omitted).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court

proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." *Bell v. Cone,* 535 U.S. 685, 694 (2002); *see also Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010). To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (2011) (citation and internal quotation mark omitted). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (citation omitted).

## 2. Ground Four

Petitioner's Fourth Ground is that the state failed to produce sufficient evidence

to sustain the convictions.  A challenge to the sufficiency of the evidence, when made in

a habeas corpus petition subject to the AEDPA, must meet an exacting standard.  As

this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81–82 (S.D. Ohio Sept. 28,

2011):

> In *Jackson v. Virginia* [443 U.S. 307 (1979) ], the United States Supreme
> Court held that as a matter of fundamental due process, a criminal
> conviction cannot stand unless each essential element is proven beyond a
> reasonable doubt. 443 U.S. at 316. The Supreme Court explained that
> when reviewing a challenge to the constitutional sufficiency of the
> evidence supporting a criminal conviction, "the relevant question is
> whether, after viewing the evidence in the light most favorable to the
> prosecution, any rational trier of fact could have found the essential
> elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme
> Court cautioned, with respect to the role of a reviewing court, that "[t]his
> familiar standard gives full play to the responsibility of the trier of fact
> fairly to resolve conflicts in testimony, to weigh the evidence, and to draw
> reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after
> reviewing the evidence in a light most favorable to the prosecution and
> respecting the trier of fact's role in determining witnesses' credibility and
> weighing the evidence, a federal court must grant habeas corpus relief "if
> it is found that upon the record evidence at the trial no rational trier of fact
> could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.
>
> It is important to remember when reviewing a sufficiency of the evidence
> challenge that this Court "do[es] not reweigh the evidence, re-evaluate the
> credibility of the witnesses, or substitute [its] judgment for that of the
> jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  If the record
> contains credible, competent evidence enabling a rational jury to find each
> essential element beyond a reasonable doubt, then Petitioner's challenge
> to the sufficiency of the evidence fails.  *Cf. Matthews v. Abramajtys*, 319 F.3d
> 780, 788–89 (6th Cir. 2003) ("The mere existence of sufficient evidence to
> convict therefore defeats a petitioner's claim.").
>
> Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding,
> however, we cannot simply conduct de novo review of the state court's
> application of [the *Jackson v. Virginia* ] rule, but must review its
> sufficiency-of-the-evidence decision under the highly deferential standard

of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir.2008). In *Tucker v. Palmer*, 541 F.3d 652 (6th Cir.2008), the Sixth Circuit explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007); *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007). This Court recognizes, however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient evidence' when reviewing a state court's application of Jackson." *Smith v. Romanowski*, No. 07–1578, 2009 WL 1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v. Palmer*, 441 F.3d 367, 352 (6th Cir.2006)).

The state court of appeals addressed this claim on its merits.  In setting forth the standard of review it would follow when analyzing petitioner's sufficiency of the evidence claim, the state court of appeals did not cite to any federal court decisions.  It did, however, rely on several Ohio decisions, including *State v. Thompkins*, 78 Ohio St. 3d 380, 678 N.E.2d 541 (1997).  *Thompkins*, in turn, cited to both *Tibbs v. Florida*, 457 U.S. 31, 45 (1982) and *Jackson v. Virginia*, 443 U.S. 307 (1979) for the proposition that "a conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Thompkins*, 78 Ohio St.3d at 386–87.  Thus, the state court of appeals identified the controlling legal principle as set out by the United States Supreme Court.

The state court of appeals also applied that principle properly.  It considered the evidence supporting each of the convictions.  First, the court cited to R.C. 2911.13(A),

18

which proscribes the trespass into an unoccupied structure, by stealth or deception, to

commit a theft offense.  The following facts from the Court of Appeals' summary of

facts apply to this conviction:

- On October 14, 2009, appellant and his brother, Nathan Halley, visited Clifford's Auto Parts.

- Carl Clifford Stapleton, the owner of the business, and an employee, Keith Pugh, knew the Halley brothers. In fact, appellant had previously worked for Stapelton [sic].

- The Halley brothers lingered for approximately fifteen minutes, during which time Nathan remained inside and talked with Stapleton and Pugh, while appellant entered and exited the building several times.

- After the Halley brothers left, Pugh went outside to lock an outer building. Pugh then discovered three missing catalytic converters that had been stored inside a building prior to the Halleys' arrival.

- A short time later, the Halleys appeared at "L & L," a scrap metal and recycling business, and sold three catalytic converters to Chris Lester, the owner's son, for $100.

- Suspecting that the Halleys may have been involved in the missing parts, and that they may have tried to sell them, Pugh visited L & L the next day. At L & L, Pugh identified the parts that the Halleys sold to Lester as the parts he had removed the previous day, shortly, before the Halleys arrival at Clifford's Auto Parts.

- At trial, Keith Pugh testified that the catalytic converters that appellant sold to L & L were the same ones that he removed from cars the previous day.

In describing the supporting evidence and its evaluation of the parties'

arguments, the state appellate court added an additional piece of evidence: "The

evidence reveals that Pugh placed three catalytic converters into an out-building shortly

before the Halleys visited Clifford's Auto Parts."  The appellate court's analysis was as

follows:

19

Appellant argues that this evidence is "weak, circumstantial evidence" at best. However, circumstantial evidence possesses the same probative value as direct evidence. *Jenks, supra*, at paragraph one of the syllabus; also see *State v. Rhoads, Highland App*. No. 08CA25, 2009–Ohio–4180, at ¶ 22. Whether evidence is direct in nature or circumstantial, the jury is being asked to do the same thing: "weigh the chances that the evidence ... correctly points to guilt" and "use its experience with people and events in weighing the probabilities." *Holland v. United States* (1954), 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150; also see *State v. Terry*, 186 Ohio App.3d 670, 929 N.E.2d 1111, 2010–Ohio–1604, at ¶ 23. The fact that Pugh placed these parts into the out-building shortly before the Halleys arrived, that the parts were missing soon after they left, and the fact that the Halleys sold three catalytic converters to L & L a short time later—provides sufficient evidence upon which the trier of fact could render a guilty verdict on breaking and entering.

*State v. Halley*, 2012 WL 1245659, at *2.

The state appellate court correctly noted that circumstantial evidence has the same probative value as testimonial evidence and that a conviction may be sustained on circumstantial evidence alone. *Tucker v. Palmer*, 541 F.3d 652, 657 (6th Cir. 2008) ("In assessing the adduced proof, the Court may sustain a conviction based upon nothing more than circumstantial evidence. . . . . Indeed, the Supreme Court has explained that circumstantial evidence is 'intrinsically no different from testimonial evidence,' and that both 'may in some cases point to a wholly incorrect result.'") (citations omitted).

In addition, this Court's independent review of the trial transcript, Doc. 8-1, confirms that the appellate court's summary of the evidence is accurate.  On direct examination, Carl Clifford Stapleton, the owner of Clifford's Auto Parts, testified that on October 14, 2009, petitioner and his brother Nathan Halley came in to the business. (Tr. at 141:24-143:15.)  He testified that he had known the brothers for a long time and

20

that petitioner worked for him "a few weeks here and there." (Tr. at 144:4-11.) Keith Pugh, who works at Clifford's Auto Parts "pulling parts," also testified that he had known petitioner and his brother Nathan Halley for a long time and that they came to Clifford's on the afternoon of October 14, 2009. (Tr. at 152:21-154:10.) Pugh testified that petitioner and his brother came in, that petitioner's brother stood inside the building and talked to Pugh for about fifteen minutes, and during that time petitioner came in and out a few times and then said that he had to go make a phone call. (Tr. at 154:11-155:1.) Pugh testified that about 10 or 15 minutes after petitioner and his brother left, he went out to lock the garage, which was separate from the office, and noticed that converters were missing. (Tr. at 155:2-19.) Stapleton's testimony specified that three converters were missing, and Pugh described three converters when testifying about the picture of the converters that were missing. (Tr. at 145:13-19; 157:1-158:20.) Pugh testified that he "had just cut them off and put them in the building." (Tr. at 158:18-25.) Chris Lester, who worked at L&L Scrap Metal and Recycling, Inc., testified on direct examination that on October 14, 2009 petitioner and his brother came to L&L shortly after the business closed at 4:30 and sold some converters to L&L for $100. (Tr. at 171:14-176:17.) Pugh testified that when he noticed the converters were missing, he called L&L; L&L said they had the converters and set them aside so that Pugh could come look at them. (Tr. at 159:14-160:9.) Lester confirmed that someone from Clifford's called him to ask if someone had sold the converters to him and Lester set aside the converters and showed them to the Clifford's employee the next day. (Tr. at 176:18-

21

177:24.)  Pugh was able to identify the catalytic converters at L&L as the ones that he removed from cars on October 14, 2009 at Clifford's Auto Parts and placed in the garage building. (Tr. 157:1-159:13; 160:6-21.)

The question raised by the petition is whether, given this evidence, the state courts unreasonably determined that there was enough evidence to permit a jury to find, beyond a reasonable doubt, that petitioner committed the crimes which the jury convicted him of.  This Court finds that the state court's decision on the sufficiency of the evidence as to the charge of trespass into an unoccupied structure, by stealth or deception, to commit a theft offense is not unreasonable, and is, in fact, a proper application of federal law to the facts of this case.

Second, the court turned to the Dollar General robbery.  The following facts from the Court of Appeals' summary of facts apply to this conviction:

- [Approximately a month after the Clifford's Auto Parts incident], Janet Jackson was working at the Dollar General Store when a man entered the store, took a Pepsi from a cooler and proceeded to the check-out counter.

- When Jackson opened the cash register, the man brandished a knife, demanded all of the money in the register and quickly fled the store.

- Although Jackson did not recognize the man, surveillance video captured the incident.

- Jonna Cutlip, another Dollar General employee, came to work the next day and viewed the video tape. Cutlip recognized the appellant as the perpetrator.

- Janet Jackson also identified appellant as the man who robbed Dollar General.

- Additionally, Carla Durham, from the Ohio Bureau of Criminal Investigation (BCI), testified that she matched appellant's finger prints to prints on the Pepsi bottle that the perpetrator brought to the counter.

22

In describing the supporting evidence and its evaluation of the parties'
arguments, the Court of Appeals wrote the following:

> As to the Dollar General robbery, the gist of appellant's insufficiency claim
> is that Jackson did not provide a sufficiently accurate description of the
> assailant. However, any discrepancy in the witness's description goes to
> the credibility and weight of the evidence rather than its sufficiency.
> Furthermore, we remind appellant that (1) Jonna Cutlip, another Dollar
> General employee, recognized him on the surveillance video; and (2) the
> Pepsi bottle he brought to the cashier, then abandoned when he fled the
> store, exhibited his prints.

*State v. Halley*, 2012-Ohio-1625 (Ohio Ct. App. Mar. 30, 2012).

The state appellate court correctly recognized that reviewing courts should

generally not make credibility assessments or weigh evidence.  *Matthews v. Abramajtys*,

319 F.3d 780, 788-89 (6th Cir. 2003) ("A reviewing court does not reweigh the evidence

or redetermine the credibility of the witnesses whose demeanor has been observed by

the trial court. . . .  It is the province of the factfinder to weigh the probative value of the

evidence and resolve any conflicts in testimony. . . .  An assessment of the credibility of

witnesses is generally beyond the scope of federal habeas review of sufficiency of

evidence claims. . . .  The mere existence of sufficient evidence to convict therefore

defeats a petitioner's claim.") (citations omitted).  Because it is the role of the factfinder

to resolve any conflicts in testimony, this court should not re-weigh the evidence

regarding the degree of accuracy of the description of the assailant, but rather should

assess whether the state appellate court was unreasonable in determining that there was

sufficient evidence to convict on this count.

23

Once again this Court's independent review of the trial transcript, Doc. 8-1, confirms that the appellate court's summary of the evidence is generally accurate.  Janet Jackson, the assistant manager for the Dollar General, testified that she was working on November 14, 2009, and the store was robbed.  (Tr. at 185:13-22; 186:23-188:1.)  She testified that a gentleman came in, took a Pepsi from a cooler and came to the register. (Tr. at 188:2-189:20.)  Jackson rang up the pop and turned to give him some change, and then he pulled out a knife, told her to give him all of the money, and took the money from the cash register.  (Tr. at 189:13-190:6.)  Jackson testified that the individual then ran out the door and down the street.  (Tr. at 193:18-20.)  She testified on cross that she had never seen the individual before the robbery.  (Tr. at 200:6-12.)  During the trial, Jackson identified petitioner as the individual who robbed the Dollar General, and she also testified that she identified him in a photo lineup.  (Tr. at 193:21-194:3; 208:9-209:15; 249:7-13.)  Jackson testified that there were surveillance cameras in the store and that one of the cameras captured the robbery.  (Tr. at 194:4-195:12.)  At trial, the prosecution played the video of the robbery.  (Tr. at 194:22-196:25.)  A police officer and a detective sergeant for the police testified that another Dollar General employee who was not working the night of the offense called the following day and identified petitioner (who she knew) from watching the surveillance video.  (Tr. at 235:13-236:19; 239:5-20; 243:1-6; 257:14-259:1.)  The police collected the Pepsi bottle that the perpetrator left on the counter and had it fingerprinted (tr. at 220:21-221:1; 221:23-225:24; 249:17-250:4), and Carla Durham from the Ohio Bureau of Criminal Investigation testified that three

24

fingerprints matched petitioner's fingerprints.  (Tr. at 263:3-265:20; 268:18-269:14.)

In light of this evidence including petitioner's fingerprints on the Pepsi bottle, this Court finds that the state court's decision on the sufficiency of the evidence as to the charge of robbery is not unreasonable.

### 3.  Ground Two

Petitioner claims that he received ineffective assistance of counsel. As argued in his appellate brief, the gist of this claim is (1) that his attorney refused to allow him to testify; (2) that his attorney failed to issue subpoenas to material witnesses that would have provided an alibi for petitioner; and (3) that his attorney failed to move the court for an acquittal pursuant to Ohio Criminal Rule 29 at the close of the State's case. Because this Court's task is to determine if the state court's decision on these issues constituted an unreasonable application of clearly established federal law, the analysis begins with the state appellate court's treatment of this claim. That court said:

> {¶ 24} Our analysis of appellant's argument begins with the settled premise that a criminal defendant has a constitutional right to counsel, and this right includes the right to effective assistance from counsel. *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763; *In re C.C.,* Lawrence App. No. 10CA44, 2011–Ohio–1879, at ¶ 10. To establish a claim of ineffective assistance of counsel, a defendant must show (1) his counsel's deficient performance, and (2) such deficient performance prejudiced the defense and deprived the defendant of a fair trial. *See e.g. Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *also see State v. Perez*, 124 Ohio St.3d 122, 920 N.E.2d 104, 2009–Ohio–6179, at ¶ 200. However, both prongs of the *Strickland* test need not be analyzed if a claim can be resolved under just one. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52, 2000–Ohio–448; *also see State v. Saultz*, Ross App. No. 09CA3133, 2011–Ohio–2018, at ¶ 19. In other words, if it can be shown that an error does exist, but did not

prejudice an appellant, the ineffective assistance claim can be resolved on that basis alone. To establish the existence of prejudice, a defendant must generally show that a reasonable probability exists that, but for counsel's alleged error, the result of the trial would have been different. *See State v. White* (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.

{¶ 25} At the outset, we note that even if appellant could establish that his trial counsel's representation was deficient in some respects, we are not persuaded that the outcome of his trial would have been otherwise. Most of appellant's arguments are based upon speculation and, as we have held many times, the prejudice prong of *Strickland* must be affirmatively proven rather than simply assumed. *See State v. Hughes*, Athens App. No. 08CA19, 2010–Ohio–2969, at ¶ 27; *State v. Clark*, Pike App. No. 02CA684, 2003–Ohio–1707, at ¶ 22; *State v. Tucker* (Apr. 2, 2002), Ross App. No. 01 CA2592. With this information in mind, we turn our attention to the specific instances of the alleged ineffective assistance.

{¶ 26} First, appellant argues that his trial counsel was deficient by "refus[ing] to allow him to testify to alibi or on his own behalf." Appellant, however, cites nothing in the record to substantiate his underlying premise that he wanted to testify, but that trial counsel denied him the opportunity. Second, a criminal defendant that opts to not take the witness stand is oftentime sound trial strategy. Damaging information may be elicited from the criminal defendant witness, especially during cross-examination. Trial tactics, even debatable ones, are not generally viewed as ineffective assistance. *State v. Westbrook*, Scioto App. No. 09CA3277, 2010–Ohio–2692, at ¶ 30; *State v. Madden*, Adams App. No. 09CA883, 2010–Ohio–176, at ¶ 25; *State v. Lewis*, Pickaway App. No. 09CA7, 2010–Ohio–130, at ¶ 21. Finally, appellant claims that he had an alibi defense to present, but that his counsel prevented him from doing so. Our review of the record, however, reveals nothing to remotely establish that any such alibi existed. If so, such information is outside the record and could form the basis for a challenge other than a direct appeal.

{¶ 27} Appellant also argues that his counsel was ineffective because he did not move for a Crim.R. 29 motion for judgment of acquittal at the conclusion of the prosecution's case. However, this inaction would constitute error only if any reasonable chance existed that such a motion would have been granted. Here, appellant does not assert that such a motion would have, in fact, been granted. Moreover, in light of our

26

> previous discussion of the evidence adduced at trial, we are not
> persuaded that the trial court would have granted the request. It is
> axiomatic that trial counsel is not required to perform a vain act in order
> to avoid an ineffective assistance claim. *State v. Sowards*, Gallia App. No.
> 09CA8, 2011–Ohio–1660, at ¶ 20; *State v. Caldwell*, Cuyahoga App. No.
> 80556, 2002–Ohio–4911, at ¶ 37; *State v. Carter* (Jul. 23, 1986), Hamilton
> App. No. C–840121. Consequently, appellant has not demonstrated any
> prejudice resulting from his trial counsel's representation.

*State v. Halley*, *supra*, at *5-6.

As the state court recognized, the controlling principles of law are set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984). The state court also explained *Strickland*'s

two-pronged test correctly, noting that in order to demonstrate ineffective assistance of

counsel, a petitioner must show both deficient performance of his or her attorney and

prejudice from that performance, *i.e.* a reasonable probability that, but for counsel's

errors, the outcome of the trial would have been different.  Thus, the only question is

whether the state court unreasonably applied these principles to the facts of this case.

We will examine each part of the ineffective assistance of counsel claim in turn.

First, the state appellate court correctly determined that petitioner failed to

demonstrate that counsel denied him the opportunity to testify.  While criminal

defendants do have a right to testify, the courts are to presume that defendants are able

to exercise that right unless there is evidence to the contrary:

> This court entertains a strong presumption that trial counsel adhered to
> the requirements of professional conduct and left the final decision about
> whether to testify with the client. . . .  To overcome this presumption,
> [petitioner] would need to present record evidence that he somehow
> alerted the trial court to his desire to testify. . . .  "[a]lthough the ultimate

> decision whether to testify rests with the defendant, when a tactical
> decision is made not to have the defendant testify, the defendant's assent
> is presumed." . . . A defendant who wants to testify can reject defense
> counsel's advice to the contrary by insisting on testifying, communicating
> with the trial court, or discharging counsel. At base, a defendant must
> alert the trial court that he desires to testify or that there is a disagreement
> with defense counsel regarding whether he should take the stand. When a
> defendant does not alert the trial court of a disagreement, waiver of the
> right to testify may be inferred from the defendant's conduct. Waiver is
> presumed from the defendant's failure to testify or notify the trial court of
> the desire to do so.

*Hodge v. Haeberlin*, 579 F.3d 627, 639-40 (6th Cir. 2009). Here, petitioner has not, in this

Court or in the state courts, drawn the courts' attention to any portion of the record

showing that he wanted to testify, and there does not appear to be any such evidence in

the record. Furthermore, the state appellate court reasonably determined that petitioner

failed to demonstrate prejudice from his failure to testify. *Id.* ("defendant must

'affirmatively prove prejudice'").

Second, petitioner argues that counsel was ineffective because he failed to

present evidence of petitioner's alibi. The state appellate court concluded that there

was nothing in the record "to remotely establish that any such alibi existed." This

Court's independent review of the record also finds nothing to establish an alibi, nor

has petitioner provided any evidence outside the record. "Mere conclusory allegations

in support of claims of ineffective assistance of counsel are insufficient, as a matter of

law, to raise a constitutional issue." *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich.

2002); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) cert. denied, 133 S.

Ct. 311, 184 L. Ed. 2d 185 (U.S. 2012). The state appellate court was not unreasonable in

determining that petitioner failed to demonstrate ineffective assistance of counsel for failure to present an alibi defense.

Finally, petitioner argues that his counsel was ineffective for failing to move the court for an acquittal pursuant to Ohio Criminal Rule 29 at the close of the State's case. Here, the state appellate court ruled that petitioner had not demonstrated or even asserted that a motion to acquit would have been granted, and further determined based on the trial evidence that reasonable minds could reach different conclusions regarding whether the elements of the charged offense were proved beyond a reasonable doubt.  Therefore, it found that petitioner had not demonstrated any prejudice resulting from his trial counsel's representation.  That finding is buttressed by the fact that both the state appellate court and this Court have found that the evidence was constitutionally sufficient to support both convictions; the state trial judge would have been faced with the same question, but would have to have come to a different conclusion, in order to have granted a motion for judgment of acquittal on either count. That is not likely.  As discussed above, based upon this Court's independent review of the record, the state appellate court's decision was not contrary to or an unreasonable application of clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### V.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that

petitioner's claims be **DISMISSED**.

## VI.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge

30